STURGES *against* MAITLAND.

How far the want of intention, to violate a penal statute, is admissible in bar of the penalty, gross negligence may be equivalent to a criminal intent.

THIS was an action of assumpsit, brought by consent of parties, to test the right of the plaintiff in the seizure of certain flour of the defendant.

The plaintiff, being an inspector of flour in the city of New York, seized 467 barrels of unbranded flour, belonging to the defendant, under the eighth section of the act entitled "An Act for the Inspection of Flour and Meal," 2 R. L. 323, which section is as follows : "Sec. 8. And be it further enacted, that if any person shall lade or attempt to lade on board any vessel, with intent to ship or export the same direct out of this state, any flour or meal not branded as aforesaid by one of the inspectors, such person shall forfeit the same; and if any person shall have exported any flour or meal out of this state, not branded by . one of the inspectors as aforesaid, such person shall forfeit and pay the sum of five dollars for every cask of flour or meal so exported." Part of the same unbranded flour was found on board the vessel of the defendant, and part on the wharf, about to be taken on board. The flour, after the seizure, was given up, under an agreement to try the rights of the parties in this action. The defendant then offered to prove, that there was no intention on his part to violate the law, that the flour was of the best mark in the New York market; that when it was inspected, after the seizure, 15 barrels, only, were rejected, and that, on account of their being damaged by rain-water. That, at the time the flour

Sturges v. Maitland.

was sent down to the vessel, his agent in the city of New York, (the defendant belonging to Virginia,) being sick and confined to his bed, gave orders to his clerk to deliver the flour on board the vessel of the defendant, and that the clerk, through inadvertence, delivered the flour uninspected.

*Wells* and *Hoffman*, for plaintiff, opposed this testimony. They contended, that the fact contemplated by the statute having occurred, the penalty attached, of course; and that no system of revenue or police law could be enforced, if the defendant should be permitted to offer such testimony in his defence.

KENT, C. J. The testimony is admissible : all infringements of police laws must be tested by the intention of the party. Without a criminal intent, there is no breach of law.(1) The defendant then proved the facts above mentioned.

(1) This case was moved before the Supreme Court, and the decision of the chief justice, at *Nisi Prius*, confirmed. There is, however, no report of the case to be found, and it is therefore difficult to determine on what precise ground the verdict was sustained. There is certainly great force in the arguments of the defendant's counsel; and, upon diligent search, no authority has been discovered which supports the principle in this case in its extent. "*Actus non facit reum nisi mens sit rea,*" is undoubtedly true, when the offence charged is *malum in se*, and also in relation to that class of *mala prohibita*, where fraud, or something *malum in se*, is an ingredient in the offence. But, in matters of mere positive inhibition, (as distinguished from the class of *mala prohibita* above alluded to) where the act prohibited was previously indifferent, and in which conscience is only so far concerned as it may be involved in the obligation of social duties of positive creation, proof of criminal intent can scarcely be a pre-requisite to the infliction of the penalty, after the commission of the prohibited act. See *U. S.* v. *Weber*, 1 Gall. 322. If such evidence were requisite, "*ignorantia legis,*" would always, in such cases, form an effectual defence, being in itself conclusive evidence of the absence of

'It was then contended by the plaintiff's counsel, that there was a gross neglect in the clerk, which was equivalent to a criminal intent, and therefore the penalty had attached.

criminal intent: the act being indifferent, previous to the passing of the law. *This seems to have been the view of this very subject,* taken by Grose, J., in the case of *Calcraft* v. *Gibbs,* (5 D. & E., 20 ;) who, in that case, (which was brought for an express penalty under the game law,) in reply to an argument pressed on the court, founded on the defendant's motives, observed, that, if the court should declare, that because a defendant acted *bona fide,* it was a sufficient excuse in an action on a penal law, it would operate almost as a total repeal of the statutes inflicting these penalties, and that, therefore, whether a defendant acted *bona fide* or not, could never be a proper consideration to be left to the jury.

That the absence of intent to violate the law, can form no 'defence in an action for a penalty, is further elucidated by the application of a well established rule of the common law. It is an undoubted maxim, that all acts of of parliament take effect by relation from the first day of the session, so that where a statute is passed at the close of the session, making an act criminal which was previously innocent, all who, during the session, had commited the act, would be liable to the penalty. The authorities on this subject are collected, and an interesting application of the principle (as far as it can occur under our law) is made in the case of the *brig Ann,* 1 Gall, 62. In that case, a penalty was inflicted under a statute of the United States, passed, but not yet known, at the place where the act was done, no sufficient time having elapsed to receive intelligence of the law from the seat of government, and no day being fixed in the body of the law, for the commencement of its operation. The statute consequently operating from the day of its passage. Here, no intention of violating the law could possibly exist: the existence of the law itself being unknown. But it was decided by the court, that ignorance of the existence of the law formed no legal excuse for the violation of it.

*Vis major,* or uncontrollable necessity, has been held to be an excuse, but beyond this the courts have not gone. And, even on this defence, the defendant has been held to great strictness of proof. " Where the law imposes a prohibition, it is not left to the discretion of a citizen, whether he will comply or not; he is bound to do everything in his power, to avoid an infringement of it. The necessity which will excuse him for a breach, must be instant and imminent; it must be such as leaves him without hope, by ordinary means, to comply with the requisitions of the law: it must be such, at least, as cannot allow a different course, without the jeopardy of life and property. If there be any negligence or want of caution, any difficulty or

Sturges v. Maitland.

KENT, C. J.   The jury must pass upon both questions:
the question of intention and the question of negligence.

danger, which ordinary intrepidity might overcome, or any innocent course
which ordinary skill might adopt or pursue, the party cannot be held guilt-
less, who, under such circumstances, shelters himself behind the plea of ne-
cessity."   Story, J., *ship Argo*, 1 Gall. 157;   *Vide etiam, brig James Wells*, 7
Cr. 22;   *Brig Struggle*, 9 Cr. 74; and such, also, is the maxim of the civil
law.   "*Nulla necessitas excusat quæ potest esse non necessita.*"

This note has met with approbation in the Supreme Court and in the Court
of Errors.   1 Cow. 77;  3 Denio, 403.

Since writing this note, two cases have been published which supply some
additional remarks on this subject.

During the embargo, an American vessel, sailing coastwise, from one
domestic port to another, was driven by stress of weather into a foreign port,
where she was constrained to sell her cargo.   On her return home, she was
libelled, under the embargo law, as forfeited.   The evidence presented a case
of undoubted extremity: she was condemned in the District Court, but the
condemnation was reversed in the Circuit, on the ground of *vis major*.   Some
of the remarks of Livingston, Justice, go beyond the case, and are worthy of
consideration.   He seems to think that it would have been better to have
administered the law to its very letter.   "It is, perhaps," he says, "to be
lamented, that the judges ever permitted themselves to make any exceptions
to the act which the legislature itself had not thought proper to incorporate
within the body of it: the latitude which has been assumed in this way, has
very much added to the uncertainty of the written law of the land, and pro-
duced much litigation, which a firm adhesion to the letter would have pre-
vented.   But it is too late for speculations of this kind.   The only use can
be, to make courts careful (and they cannot be too much so) never to depart,
under the idea of preventing a particular hardship, from the plain and obvi-
ous meaning of the legislature."   From these remarks, it would seem that
the courts had, to a great extent, exercised the right of inquiring into the
guilt or innocence of the party, in acts violating the law.

The same judge, acting on the principle, it would seem, which had go-
verned our judges, and remarking on the necessity of a concurrence of the
will to make a party culpable, says: "The restriction which every judge
should impose upon himself, (of not transcending the letter,) is not invaded
when, in the interpretation of penal statutes, any principle is applied which
is found in every code of laws, divine or human, and has, from time imme-
morial, been engrafted into the common law of the country from which our
jurisprudence is borrowed.   When such rules or principles exist, and have

A neglect may be so gross as to amount to a criminal intent. If the jury should be of opinion that this is such a

invariably and on all occasions governed courts in the administration of criminal justice, they become as much a part of the law and are as obligatory on a court as the statute which it may be called to expound. Of this kind is the one of which the appellants now claim the benefit, that the concurrence of the will in what is done, when it has a choice, is the only thing that renders a human action culpable; or, in other words, that, to make a complete offence, there must be both a will and an act. This axiom, as it may be termed, is applied as well to offences created by statute as to those which are such at common law." Livingston, J., *Brig Wm. Gray*, 1 Paine, 20.

This certainly carries the doctrine quite as far as it is carried by Kent, J., in the principal case. The case of the *Brig Wm. Gray*, however, is an authority only in favor of *vis major*, as an exception in cases of *mala prohibita*. The general remarks are entitled to great respect, as the *dicta* of a very learned and highly educated judge.

It seems to me, that the solution of the question depends upon another which has much exercised the minds of legal moralists, viz. : whether such mere human laws—rendering certain actions illegal, which before were innocent—are binding or not on the conscience, or whether all obligations of duty are involved in the payment of the penalty. If they affect the conscience, then clearly the reasoning of the learned judge is sound *actus non facit reum nisi mens sit rea*. If, on the other hand, they present mere positive directions, satisfied by the penalty when the mischief has occurred, the happening of the evil, from whatever cause, entails the penalty, from politic considerations. See this discussed in German's Doctor and Student.

It may be a difficult matter to apply these considerations to the vast variety of *mala prohibita*, constantly growing up in an advancing community. What is right and proper in this view, in relation to one class, may be quite inappropriate to another. Hence, it would seem to be the better legislation, that the act creating the offence should make provision on this subject.

In a commercial country, where a system of revenue laws is of vital importance, " these laws must contain so many and such minute provisions, enforced by a corresponding number of penalties and forfeitures, as frequently to subject to difficulties the most upright and wary merchant, and expose his property to seizure and confiscation. *U. S. v. Morris*, 1 Paine, 234.

Hence, the innocence of the party, in this class, must be regarded to some extent. The United States, in their legislation on this subject, made early provisions for such cases in the act itself, by giving to the collector, and also to the court in which a prosecution should be had for such forfeiture, the

case of negligence; they must find for the plaintiff on that ground.(2)

Verdict for defendant.

*Wells* and *Hoffman,* for plaintiff.

*D. B. Ogden,* for defendant.

power to decide whether the act proceeded from accident or mistake, or from an intention to defraud the revenue. Laws of U. S., ch. 128, sec. 67.

The principle has been ever since retained in the laws of the Union, in a modified form; but the relief is given in a different way and according to the provisions of an earlier law, by petition to the Secretary of the Treasury. U. S. Laws, ch. 361, sec. 25; and ch. 67.

Since the introduction of these provisions in the law, it has been said by the courts, that, as the secretary has jurisdiction of the matter, he had better be regarded, not only as the proper person to afford relief, but as the sole judge of the extent of it. *U. S.* v. *Morris,* 1 Paine, 240.

And it is held, that such remission cannot be regarded as a ministerial act; that it partakes much of a judicial character; that it can only be made on evidence regularly taken, so that this act of the secretary, in deciding on the innocence of the claimant, is as much a judicial one as is that of the court in pronouncing on the fact of forfeiture. Ib.

Perhaps, upon the whole, the example set by the United States, in creating a precise and distinct tribunal to remit penalties incurred in whole or in part, according to the equity of the case, or innocence of the party, is the wisest legislation on this subtle subject. Vide 1 Cow. 77; *Morris* v. *The People,* 3 Denio, 403.

(2) This is conformable to the rule of the civil law, which we find there variously expressed, " *Negligentia nimia lata culpa est, non intelligere quod omnes intelligunt;*" " *lata negligentia prope fraudem est;*" " *negligentia, magna culpa est, magna culpa dolus est;*" " *negligentia magna, in doli crimen cadit.*"